UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(CENTRAL DIVISION)

|  |  |
|---|---|
| In re | ) |
| BEAVER BROOK VILLAGE, LLC, | ) CHAPTER 11 |
| | ) Case No. 10- |
| Debtor. | ) |

**DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL
(REQUEST FOR EXPEDITED DETERMINATION)**

Beaver Brook Village, LLC ("debtor"), by its proposed attorneys, The Schreiber Law Firm, LLC, hereby moves on an emergency basis, pursuant to Section 363 of Title 11, United States Code ("Bankruptcy Code"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") for an Order authorizing the debtor to use cash collateral consisting of the collection and receipt of funds generated in the ordinary course of business to the extent stated herein. Debtor requests an expedited hearing on this motion.

In support of this motion, the debtor states the following:

**INTRODUCTION**

1. On October 11, 2010, the debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Currently, the debtor is authorized to operate its

business pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The debtor owns and operates a mixed-use real estate development of a 6 ½ acre site located at 101 Mill Street, Dracut, MA ("Mill"). This former mill site has been redeveloped into forty-seven (47) residential apartment units and approximately thirty (30) commercial units. Frank J. Gorman Sr. is the manager of the development and owns a 96 percent interest in the debtor. Mr. Gorman's four children own the remaining equity interests in the debtor.

## BACKGROUND

3. On August 10, 2007, the debtor commenced in this court a prior Chapter 11 case, case no. 07-43103 (Rosenthal, J). On Christmas Eve of 2008, this court entered an order confirming debtor's plan of reorganization which had been substantively consolidated with a related case, In re Frank J. Gorman, Sr., Case no. 07-43372. The Plan was substantially consummated and the court entered a final decree in the substantively consolidated cases.

4. Since that time, debtor's cash flow has continued to decline as the real estate market in Dracut, Massachusetts has too declined. Debtor's projections were based upon a slow but steady increase in rents but as is self evident, the real estate market in the Merrimack Valley and surrounding areas has

continued to slide since the debtor's joint plan was confirmed. Consequently, debtor's rent collections have decreased. The result is that while debtor has been able to pay most of its other bills on a timely basis, the debtor has defaulted on its debt service payments as reorganized and provided under the previously confirmed plan.

5. Debtor's lender is Bank of America, successor by merger to LaSalle Bank, N.A. as Trustee for JPMorgan Chase Commercial Securities Trust 2007-CIBC19 ("BOA"). BOA's loan services is LNR Partners of Quincy, MA. ("LNR"). Mr. Gorman, in behalf of the debtor, has written no less than twelve letters to LNR regarding certain logistics of the project such as the lock box arrangement, LNR or BOA's failure to reimburse certain funds as provided under the confirmed plan, and the declining amount of rents derived from the project. In response to LNR's utter failure to communicate with Mr. Gorman, debtor's counsel was requested to communicate with BOA's lawyer, Bruce Barnett, of DLA Piper. In behalf of the debtor, counsel requested a meeting with the applicable LNR representatives to attempt to workout this loan. BOA was asked to forbear from taking any precipitous actions to make an entry and take possession of the project. BOA refused. A copy of Mr. Barnett's e-mail is attached as Exhibit A.

6. Consequently, in order to preserve the equity and remaining viability of the development, Debtor filed its second Chapter 11 petition.

## USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

7. As more fully provided in the affidavit of Frank J. Gorman, Sr., the managing member of the debtor, filed with this motion, the debtor requires the use of proceeds of rents, accounts and other cash in the approximate amount of $79,125.00 during the 30 day period beginning October 11, 2010 to maintain the operation of its business. Debtor's business may be operated on a profitable basis, and in the ordinary course of the operation of said business, more rents and cash receipts will be generated. The debtor proposes to provide adequate protection to any party in interest determined by the court to hold a duly perfected and unavoidable security interest in the debtor's rents, cash, the proceeds of accounts and accounts receivable of the debtor by transferring the lien of said interested party to the rents and cash receipts created by the debtor with the same force and effect as a lien attaches to the existing cash, accounts and proceeds from accounts. Furthermore, the debtor agrees to maintain said accounts and cash at approximately the same ratio of collateral to debt as existed as of the commencement of the case. Finally, debtor proposes to make monthly adequate protection payments to BOA in the amount of $35,000.00. This adequate protection payment includes the

amounts required for property tax escrows, capital program escrows and insurance escrows.

WHEREFORE, the debtor respectfully requests that the Court enter an order authorizing to use cash collateral in the amount of $79,125.00 during the 30 day period beginning October 11, 2010, and for such other and further relief as may be appropriate.

                              Respectfully submitted,

                              BEAVER BROOK VILLAGE, LLC,
                              By its proposed counsel,
                              THE SCHREIBER LAW FIRM, LLC

                              /s/Jeffrey A. Schreiber
                              Jeffrey A. Schreiber (BBO 447110)
                              Edward C. Dial, Jr.BBO 639510)
                              53 Stiles Road, Suite A102
                              Salem NH 03079
                              (603) 870-5333
                              jschreiber@schreiblaw.com

Dated: October 11, 2010

## Ed Dial

**From:** Barnett, Bruce [Bruce.Barnett@dlapiper.com]
**Sent:** Tuesday, October 05, 2010 7:24 PM
**To:** Jeff Schreiber
**Cc:** 'Ed Dial'
**Subject:** RE: Beaver Brook

Jeff:

I am in the process of identifying the right person at LNR to whom Beaver Brook's request for a meeting should be directed.

Your confirmation of our conversation yesterday omits two key elements. First, you told me that Beaver Brook was in default of the confirmed plan of reorganization approved by the Bankruptcy Court and had failed to make its last few monthly payments on the mortgage being serviced by LNR. Second, I told you that the Lender was not agreeing to forebear from exercising any right or remedy it has in connection with the loan. The fact that you are in good faith asking for a meeting to discuss a further modification of the loan as to which, by your own description, Beaver Brook is currently in default does not create any obligation on the part of the Lender to have any meeting or engage in any workout discussions. Any expectation Beaver Brook has about what the Lender may or may do not is wholly its own creation and is not based on anything communicated by me or anyone else acting on behalf of the Lender. The Lenders reserves all its rights and remedies, including the right to exercise any remedy at any time as allowed under the loan documents, at law, or in equity.

Please send to me copies of the correspondence between Mr. Gorman and LNR that you refer to below and which you referenced during our conversation yesterday.

Thanks,
Bruce

Bruce S. Barnett
DLA Piper LLP (US)
617.406.6002 T

---

**From:** Jeff Schreiber [mailto:jschreiber@schreiblaw.com]
**Sent:** Tuesday, October 05, 2010 5:43 PM
**To:** Barnett, Bruce
**Cc:** 'Ed Dial'
**Subject:** Beaver Brook

Hi Bruce:

This e-mail confirms our brief telephone conversation yesterday.

Unfortunately, the real estate market in Dracut and elsewhere has continued to decline. Beaver Brook Village, LLC ("Beaver Brook") is not able to keep both commercial and residential units leased. Consequently, there's been a significant reduction in rental income not forecasted under the Debtor's Chapter 11 plan.

Before Beaver Brook files another Chapter 11 case, to which it has a right to commence, we'd like

10/6/2010

an opportunity to sit down with representatives of LNR, who have authority to attempt to workout this real estate project. There is a reasonable solution for LNR that includes a reduction of interest rate and other note terms that will not harm LNR but instead would make the project feasible in light of the declining amount of rents derived therefrom.

As we also discussed, this e-mail is sent to you in good faith. We do not expect that LNR will take any precipitous action, including but not limited to, making an entry for the purpose of collecting rents and displacing current management without first trying to reach a reasonable settlement to this dilemma with Beaver Brook. None of this should be news to your client. Frank has communicated to your client in writing several times over the last few months the problems and his concerns without any meaningful response from LNR. Please confirm that LNR will not take any precipitous action pending an attempt to resolve this matter consensually with Beaver Brook Village, LLC.

Thank you for your courtesies. I look forward to your prompt response

Jeff

# Jeffrey A. Schreiber
The Schreiber Law Firm, LLC
A National Business & Trial Law Firm
Midwest Office
1320 W. Spencer Avenue
P.O. Box 1225
Marion, Indiana 46952
Phone: (765) 673-6300
Fax:    (765) 664-5888
jschreiber@schreiblaw.com

The Schreiber Law Firm, LLC

This communication, including any attachments transmitted with it, is intended solely for the individual or entity to whom it is addressed and may contain information subject to the attorney-client privilege and/or the work product rule, or otherwise confidential and exempt from disclosure under applicable law. The transmission, accidental or otherwise, of the information set forth in this communication and/or any accompanying attachments to any person or entity other than the identified recipients of this communication as set forth above is completely inadvertent. Such transmission is not intended by the sender or by any of our clients to waive any applicable privilege, the protection against disclosure afforded by any rule or any other right of confidentiality, or exemption from disclosure available under applicable law. If you are not an identified recipient of this communication (or the employee or agent responsible for the delivery of this communication and any attachments to an identified recipient), any dissemination, distribution, or copying of this communication or of any attachment is strictly prohibited. If you have received this communication in error, please notify the sender and delete the communication and any attachments. Thank you.

Please consider the environment before printing this email.

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

10/6/2010